UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 26-CV-00090 (JMB/LIB)

DAREY ENRIGUE SALCIDO-DOMINGUEZ,

        Petitioner,

        v.

WARDEN, FCI SANDSTONE,

        Respondent.

**RESPONSE TO
PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT
TO 28 U.S.C. § 2241**

## INTRODUCTION

Petitioner Darey Salcido-Dominguez ("Salcido-Dominguez") brings this habeas action against the U.S. Bureau of Prisons ("Bureau" or "BOP") alleging his due process rights were violated during the processing of an incident report that resulted in the loss of good conduct time. He alleges he was not provided 24 hours to prepare for his disciplinary hearing, and if he had been afforded more time, he would not have been found guilty. Respondent respectfully requests that the Court deny the petition.

## BACKGROUND

**I.    Petitioner's Place of Confinement, Sentence, and Release Date.**

Salcido-Dominguez is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). Declaration of Jason Bradley ("Bradley Decl.") ¶ 7, Bradley Ex. B at 1. He was convicted of Conspiracy to Distribute Powder Cocaine and Heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. *Id.* ¶ 7; Bradley Ex. B at 2. He currently has a projected good conduct time release date of October 20, 2031.

1

*Id.*; Bradley Ex. B at 1.

## II.    Inmate Discipline is Imposed through the BOP's Disciplinary Program.

The Bureau's disciplinary program is authorized by 18 U.S.C. § 4042(a)(3). To ensure that inmates live in a safe and orderly environment, the Bureau has established guidelines to fairly impose discipline on inmates. 28 C.F.R. § 541.1. When BOP staff members witness or reasonably believe an inmate has committed a prohibited act, a staff member prepares an incident report describing the alleged violation of the disciplinary code and refers it to the appropriate Lieutenant for investigation. 28 C.F.R. § 541.5; Bradley Decl. ¶ 3, Ex. A at 18-19. The investigating officer provides the inmate with a copy of the incident report (ordinarily within 24 hours of staff becoming aware of the inmate's involvement in the incident) and investigates the matter. *Id.* If the conduct may result in criminal prosecution, the investigation and applicable timeframes are suspended until the criminal investigative agency releases the report for administrative processing. *Id.*

Upon completion of an investigation, the Warden delegates the authority and duty to a Unit Disciplinary Committee ("UDC") to hold an initial hearing, ordinarily within five workdays after the incident report has been issued. 28 C.F.R. § 541.7; Bradley Decl. ¶ 4, Bradley Ex. A at 24-25. If the incident report is not timely heard by the UDC, the Warden must approve the delay. *Id.* The UDC ordinarily consists of two or more staff members, but only one is required when policy provides for the incident report to be referred to the Discipline Hearing Officer ("DHO"). 28 C.F.R. § 541.7, Bradley Ex. A at 24. If the UDC finds the inmate committed the prohibited act, it can impose sanctions for certain disciplinary violations or refer the incident report to the DHO. Bradley Decl. ¶ 4, Bradley

Ex. A at 24-25. If an inmate is charged with a Greatest or High severity prohibited act (code 100 or 200 level charges), the UDC will automatically refer the incident report to the DHO for further processing. Bradley Ex. A at 24. The UDC gives the inmate a written copy of its decision, and when the UDC refers an incident report to the DHO, advises the inmate of his rights at the DHO hearing. 28 C.F.R. § 541.7; Bradley Decl. ¶ 4, Bradley Ex. A at 26.

A DHO is an impartial[1] discipline hearing officer who is responsible for conducting institution disciplinary hearings and imposing appropriate sanctions. 28 C.F.R. § 541.8; Bradley Decl. ¶ 5, Bradley Ex. A at 28, 34, 45-56. The DHO provides the inmate with the opportunity to have a staff representative, make a statement, and present witnesses and documentary evidence. 28 C.F.R. § 541.8; Bradley Decl. ¶ 5, Bradley Ex. A at 28-34. The inmate receives a written report of the DHO's final decision. 28 C.F.R. § 541.8; Bradley Decl. ¶ 5, Bradley Ex. A at 35.

### III.    The Bureau Followed its Disciplinary Program When Imposing Discipline on Morris.

The Incident Report at issue is the first time Salcido-Dominguez has been disciplined during his incarceration with the BOP. Bradley Decl. ¶ 8; Bradley Ex. C.

### A.  Issuance of the Incident Report.

On May 12, 2025, at approximately 9:25 a.m., Salcido-Dominguez received a copy of Incident Report No. 4115802, for a violation of Code 108, Possession of a Hazardous

---

[1] The DHO should not be a victim, witness, investigator, or otherwise be significantly involved in the incident. Bradley Ex. A at 28.

Tool. Bradley Decl. ¶ 9, Bradley Ex. D. According to that incident report, on May 11, 2025, at approximately 3:08 p.m., the reporting officer was conducting a routine round of the K-C housing unit and observed inmate Salcido-Dominguez, Darey Reg. No. 18100-045, sitting in his cubical K33-030L assigned to him according to Sentry. *Id.* The reporting officer witnessed Salcido-Dominguez toss a black cellular device in a trash can sitting next to his chair. *Id.* Salcido-Dominguez was given a direct order to stand to conduct a pat search. *Id.* The reporting officer recovered the contraband and secured the black-in-color Samsung cellular device IMEI #352??3423793402 SIM #8914800010574801098. *Id.* Operations Lieutenant was notified. *Id.*

### B. The Investigation.

When the incident report was delivered to Salcido-Dominguez, the investigating lieutenant advised him of his rights during the disciplinary process. Bradley Decl. ¶ 10, Bradley Ex. D at 3. The investigating officer noted that Salcido-Dominguez made no comment. *Id.* The investigating officer found that the charges were valid and supported by the evidence and referred the Incident Report to the UDC for a hearing. *Id.*

### C. The UDC Hearing.

On May 12, 2025, at approximately 11:48 a.m., the UDC conducted a hearing on Incident Report No. 4115802. *Id*. ¶ 11, Bradley Ex. E at 2. During the hearing Salcido-Dominguez made no comments. *Id.* The UDC referred the charges to the DHO for further hearing. *Id*. The UDC advised Salcido-Dominguez of his rights during a DHO hearing and gave him an opportunity to request witnesses and a staff representative. *Id.* ¶ 11, Bradley Ex. D at 3, Bradley Ex. E, Bradley Ex. F. Salcido-Dominguez waived is right to a staff

4

representative and declined to call any witnesses. *Id*.

### D. DHO Hearing.

On May 12, 2025, at approximately 9:15 a.m., DHO Bradley conducted a hearing on Incident Report No. 4115802, and subsequently, issued a written report on June 2, 2025. *Id*. ¶ 12, Bradley Ex. G. Salcido-Dominguez received a copy of the DHO report on June 3, 2025. *Id*. ¶ 12, Bradley Ex. G at 4.

As documented in the DHO report, Salcido-Dominguez made the following oral statement at his DHO hearing: "I didn't toss anything in the trash." *Id.* ¶ 13, Bradley Ex. G at 1. Salcido-Dominguez waived his right to call witnesses and did not present any documentary evidence on his behalf. *Id.* ¶ 13, Bradley Ex. G at 2.

Based on the Incident Report, investigation, supporting documentation, and the statement made by Salcido-Dominguez at the DHO hearing, the DHO found he committed the prohibited act of Code 108, Possession of a Hazardous Tool. *Id.* ¶ 14, Bradley Ex. G at 3. To express the gravity of the infraction and to deter Salcido-Dominguez from the prohibited behavior in the future, the DHO sanctioned him as follows: (1) disallowance of 41 days good conduct time; (2) 180 days forfeit non vested good conduct; (3) 180 days loss of commissary privileges; (4) 180 days loss of email privileges; (5) 180 days loss of phone privileges; and (6) $25.00 monetary. *Id.* The sanctions imposed are within the guidelines authorized by BOP Program Statement 5270.09, *Inmate Discipline Program*. *Id.* ¶ 17, Bradley Ex. A at 45-47. The DHO provided the reasons for the sanctions. *Id.* ¶ 16, Bradley Ex. G at 3.

## IV.    Salcido-Dominguez's Use of the Bureau's Administrative Remedy Program.

The BOP has established a multi-tier administrative remedy program that affords inmates in federal institutions the opportunity to voice concerns regarding their confinement and provides BOP staff an opportunity to resolve issues internally before an inmate seeks judicial relief. The BOP's remedy program requires an inmate to: (1) attempt informal resolution of the grievance by submitting a Request for Informal Resolution form ("BP-8") to unit staff and, if unsuccessful, file a formal Request for Administrative Remedy form ("BP-9") with the Warden within 20 days of the event triggering the inmate's complaint; (2) if dissatisfied with the Warden's response, appeal to the appropriate Regional Director by filing a Regional Office Administrative Remedy Appeal form ("BP-10") within 20 days of the date of the Warden's response, and (3) if dissatisfied with the Regional Office's response, appeal to the Director, National Inmate Appeals, in the Office of General Counsel by filing a Central Office Administrative Remedy Appeal form ("BP-11") within 30 days of the date of the Regional Office's response. 28 C.F.R. §§ 542.13 to .15. An inmate may not raise an issue in an appeal that was not raised in a lower-level filing. 28 C.F.R. § 542.15. An inmate has not exhausted his administrative remedies until he receives a response from the Central Office, unless the time allotted for its reply is exceeded. 28 C.F.R. §§ 542.15, 542.18.

Since July 1980, the Bureau has maintained in its SENTRY database information related to administrative complaints and appeals filed by inmates. Declaration of Jake Bush (Bush Decl.) ¶ 10. A computerized search of the SENTRY database can be conducted to

6

find information on administrative complaints and appeals filed by a specific inmate. *Id.* Each formal complaint and appeal (i.e., BP-9, BP-10, and BP-11) is logged into SENTRY at the receiving location. *Id.* ¶ 11. If the complaint is an initial filing, it receives a unique Remedy ID Number. *Id.* Each Remedy ID Number also contains an extension that identifies the level of review, i.e., "F-1" when filed at the institutional level, "R-1" at the regional level, or "A-1" at the national level. *Id.* Hard copies of filed administrative remedies are maintained for a period of three years. *Id.* ¶ 13.

As of March 13, 2026, Salcido-Dominguez has attempted to file two administrative remedies related to appealing his DHO complaints brought in his petition. *See id.* ¶ 14; Bush Ex. A. These two relevant remedies were filed in administrative remedy series 1244785. *Id.* On June 23, 2025, Salcido-Dominguez filed 1244785-R1 at the Regional office level, which was denied on June 26, 2025. *Id.* ¶ 15, Bush Ex. B. Salcido-Dominguez then attempted to appeal to the Central office level by filing 1244785-A1, which was received by Central Office on July 24, 2025, and rejected because he did not sign his appeal. *Id.* ¶ 16; Bush Ex. A at 2. As of March 13, 2026, Salcido-Dominguez has made no further attempts to exhaust his administrative remedies. *See id.* ¶ 17.

## ARGUMENT

Salcido-Dominguez's asserts the disciplinary proceeding violated his constitutional right to due process. He argues he was denied 24 hours to prepare a defense because his DHO hearing was held 23 hours and 50 minutes after he received a copy of the incident report. ECF No. 1 at 6. According to Salcido-Dominguez, the premature hearing prevented him from presenting evidence, calling witnesses, and requesting a staff representative. *Id.*

at 7. In a supporting declaration, he explains that the hearing began as he (1) "was writing a note to request a staff representative who could review the security footage and rebut the reporting officer's false narrative," (2) "brainstorming the names of fellow prisoners whom [he] could call as witnesses to rebut the reporting officer's false narrative," and (3) preparing a statement for the DHO. ECF No. 2 at 2. The petition should be denied.

## I.     The Petition Should Be Dismissed Because Salcido-Dominguez Failed to Exhaust His Administrative Remedies.

A federal prisoner wishing to challenge an action of the BOP must ordinarily exhaust administrative remedies before seeking extraordinary relief in a § 2241 petition. *Mathena v. United States*, 577 F.3 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam); *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court.").

However, "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional." *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007). Because exhaustion is not jurisdictional, courts may create exceptions to the exhaustion requirement. *Frango v. Gonzales*, 437 F.3d 726, 728-29 (8th Cir. 2006). In determining whether a prisoner should be required to exhaust administrative remedies, courts exercise their discretion by "balanc[ing] the interests of the individual in retaining

8

prompt access to a federal forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). Exhaustion protects administrative agency authority and promotes judicial economy. *Id.* at 144-45. The Eighth Circuit has held that a district court may err by considering the merits of a petition for a writ of habeas corpus when the petitioner "failed to demonstrate he had" properly exhausted his administrative remedies prior to seeking habeas corpus relief. *United States v. Thompson*, 297 F. App'x 561, 562 (8th Cir. 2008). Habeas petitioners can be excused from exhausting administrative remedies if they show that proceeding through the remedy process would be futile and would serve no useful purpose. *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004).

"If a prisoner deprives prison officials and the courts of the benefits of the administrative remedies process, by failing to pursue his administrative remedies in a proper and timely manner, his claims are procedurally defaulted." *Donnelly v. Fed. Bureau of Prisons*, No. 10-cv-3105 (DWF/JSM), 2012 WL 2357511, at *3 (D. Minn. May 30, 2012) (collecting cases), *R&R adopted*, 2012 WL 2357490 (D. Minn. June 20, 2012). "The benefits from prior administrative review are substantial. The procedure must be given the opportunity to succeed." *Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976). "Procedurally defaulted claims will not be entered in federal court, unless the prisoner is able to show 'cause' for his default, and that actual prejudice will result if his claims are procedurally barred." *Hach v. Anderson*, No. 3-cv-6111 (RHK/SRN), Dkt. 15 at 16 (D. Minn. Oct. 12, 2004), *R&R adopted*, Dkt. 19 (D. Minn. Dec. 28, 2004), *aff'd*, 191 F. App'x 511 (8th Cir. 2006). The United States Supreme Court has explained, "'cause' under the

cause and prejudice test must be something *external* to the petitioner, something that cannot be fairly attributed to him…." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).

Here, although Salcido-Dominguez claims he has exhausted his administrative remedies, ECF No. 1 at 2-3, he has not done so. *See* Bush Decl. ¶¶ 14–17, Bush Ex. A. Salcido-Dominguez failed to refile his Administrative remedy at the central office level after it was rejected because he did not sign it. *Id.* ¶¶ 16-17. He had ample time to sign the remedy and resubmit it. Instead, he filed this habeas petition. By failing to pursue his administrative remedies in a proper and timely manner, Salcido-Dominguez's claims are procedurally defaulted. *See Donnelly*, 2012 WL 2357511, at *3. Salcido-Dominguez also failed to show "cause" for his default and that actual prejudice would result if his claims were procedurally barred. *See Hach*, No. 3-cv-6111 (RHK/SRN), Dkt. 15 at 16. Pursuant to *McCarthy*, 503 U.S. at 144-45, the interests of judicial economy and the BOP's administrative authority warrant dismissal of the petition based on Salcido-Dominguez's failure to exhaust.

II.    **The Petition should be Denied Because Salcido-Dominguez Received Procedural Due Process and Because Sufficient Evidence Supports the DHO's Decision to Remove GCT.**

A.    **Salcido-Dominguez Received Procedural Due Process.**

Depriving an inmate of good conduct time for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951-52 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)). However, [p]rison disciplinary proceedings are not part of a criminal prosecution, and

10

[therefore] the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. In *Hill*, the Supreme Court clarified that *Wolff* held an inmate subject to the loss of good conduct time in a prison disciplinary setting must receive the following minimal due process:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.[2]

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453-54 (1985); *see also Wolff, 418* U.S.at 563-67; *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Salcido-Dominguez does not dispute he received a copy of the DHO's report. *See generally* ECF No. 1. Rather, he argues the premature hearing—by 10 minutes—deprived him of an opportunity to mount a defense. In *Wolff*, the Supreme Court held that an inmate must receive written notice of the charges against him so he can "marshal the facts and prepare a defense." 418 U.S. at 564. The Supreme Court then stated, "At least a *brief period* of time after the notice, *no less than 24 hours*, should be allowed to the inmate to prepare for the appearance before the" disciplinary committee. *Id.* (emphasis added). However, the *Wolff* Court did not provide any explanation for why it concluded 24 hours was the appropriate window of time between notice and hearing. Subsequently, the *Hill* Court summarized *Wolff* as requiring "*advance* written notice of the disciplinary charges," without reference to a specific period. 472 U.S. at 454. Here, Salcido-Dominguez's hearing

---

[2] These requirements are codified at 28 C.F.R. § 541.

was 10 minutes premature, not 10 hours. Under these circumstances, this Court should decline to find a procedural due process violation because the Bureau provided him with a "brief period" of 23 hours and 50 minutes between his written notice and the DHO hearing.

In the alternative, if the Court were to find Salcido-Dominguez's procedural due process rights were violated by the premature hearing, it should still deny the petition. Challenges to prison disciplinary hearings are subject to a harmless error analysis. *See Adams v. Federal Bureau of Prisons*, No. 11CV2862 (MJD/SER), 2011 WL 7293381, *2 (D. Minn. Dec. 6, 2011) (collecting cases); see also *Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011); *Pilgrim v. Luther*, 571 F.3d 201, 206 (2nd Cir. 2009); *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *Powell v. Coughlin*, 953 F.2d 744, 750 (2nd Cir. 1991). Salcido-Dominguez identified three harms he suffered because his DHO hearing occurred 23 hours and 50 minutes after he received his notice, but upon closer examination, the alleged harms would not have impacted the DHO's decision.

First, Salcido-Dominguez alleges he "was writing a note to request a staff representative who could review the security footage and rebut the reporting officer's false narrative." ECF No. 2 at 2. As a preliminary matter, he could have made the request for both the staff representative and video review during the DHO hearing, but he did not. Bradley Decl. ¶¶ 20-21. Further, because he declined the offer of a staff representative after the UDC hearing, *see* Bradley Decl. ¶ 11; Bradley Ex. F, the DHO confirmed during the hearing he still wished to decline a staff representative, Bradley Decl. ¶ 20. Salcido-Dominguez's failure to request a staff representative when specifically asked during the hearing undermines his current claim that prior to the hearing, he planned to request one.

12

Similarly, Salcido-Dominguez's failure to request video during the hearing also undermines his current claim that, prior to the hearing, he planned to ask a staff representative to review it.

Further, even if a staff representative or the DHO had reviewed video evidence, it would not have changed the outcome of the hearing. The DHO indicated K-Unit at FCI Sandstone is a cubicle-style unit. Bradley Decl. ¶ 22. While the cameras may have an aerial view of the cubicles, it does not provide definitive evidence one way or another of what happened inside the cubicle in the DHO's experience. *Id.* Here, the DHO would have afforded greater weight to the first-hand account of the reporting officer who had a direct line of sight of Salcido-Dominguez's actions. *Id.*

Second, Salcido-Dominguez claims he was "brainstorming the names of fellow prisoners whom [he] could call as witnesses to rebut the reporting officer's false narrative." and ECF No. 2 at 2. Like the video evidence, the statements of other inmates would not have been persuasive to the DHO. Bradley Decl. ¶ 23. As the DHO explained, there were no inmates in the cubicle with Salcido-Dominguez during the incident; if there had been another inmate present, the reporting officer would have included their name and register number in the incident report. *Id.* Any inmate witness would have been standing outside the cubicle, and in the DHO's opinion, their view would have been obstructed by the cubicle walls and/or the reporting officer. *Id.* The DHO therefore would not have afforded inmate statements more weight than the reporting officer's account. *Id.*

Third, Salcido-Dominguez alleges he was preparing a statement for the DHO. ECF No. 2 at 2. The DHO offered him an opportunity to make a statement during the hearing,

and he did so, stating: "I didn't toss anything in the trash." Bradley Decl. ¶¶ 13, 24; Bradley Ex. G at 1. He did not inform the DHO he needed additional time to pull a statement together. Bradley Decl. ¶ 24.

Because Salcido-Dominguez was not harmed by his DHO hearing being held 23 hours and 50 minutes after he received written notice of the charges against him, the Court should deny the petition.

> **B.  Sufficient Evidence Supports the DHO's Decision that Salcido-Dominguez Should Be Held Responsible for Violating Disciplinary Code 108.**

Due process also requires that a DHO's finding be based on "some evidence in the record." *Hill*, 472 U.S. at 454. This highly deferential standard requires only the existence of "some evidence from which the conclusion of the administrative tribunal could be deduced . . ." *Id.* at 455 (citation omitted). "Revocation of good time credits is not comparable to a criminal conviction . . . and neither the amount of evidence necessary to support such a conviction . . . nor any other standard greater than some evidence applies in this context." *Id.* at 456. "Some evidence" can include: (1) statements or testimony, or (2) a written account of the incident or incident report. *Id.* at 456-57. In determining whether "some evidence" supports the discipline, the Court need not assess the credibility of the evidence relied upon:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (emphasis supplied). Once the Court determines there is "some evidence" to support the finding of the DHO, it should not look further to see whether other evidence in the record may have suggested an opposite conclusion; rather, the Court should reject the evidentiary challenge by a petitioner and uphold the DHO's finding. *Id.* at 457; *Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir. 1986); *Goff v. Dailey*, 991 F.2d 1437, 1442 (8th Cir. 1993); *see also Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003) ("[C]ourts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record.").

Here, "some evidence" supports the DHO's finding that Salcido-Dominguez possessed a hazardous tool, i.e., a cellular phone, in violation of Code 108. Under BOP Program Statemetn 5270.09, *Inmate Discipline Program*, Code 108 is described as "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, *portable telephone*, pager, or other electronic device)." Bradley Ex. A at 45; *see also* 28 C.F.R. § 541.3, Table 1. As noted in the DHO Report, the DHO considered the reporting officer's account that he observed Salcido-Dominguez toss a cellular phone into a trash can next to where he was sitting. Bradley Ex. G at 2. The DHO further considered photographs of the cellular phone. *Id.* This evidence is sufficient to demonstrate Salcido-Dominguez possessed a cellular phone in violation of Code 108.

In his pleadings, Salcido-Dominguez argues without explanation that the reporting officer's account is false. ECF No. 1 at 7; ECF No. 2 at 2. At his DHO hearing, he said he did not toss anything into the trash, and the DHO did not find this statement credible. Bradley Ex. G at 3. Even if the DHO had afforded his statement weight, it does not change the fact a cellular phone was found in a trash can next to where Salcido-Dominguez was sitting in his cell. Inmates can be held accountable for any contraband located in their cell under a theory of collective culpability. *See Flowers v. Anderson*, 661 F.3d 977, 980-81 (8th Cir. 2011) (upholding discipline imposed for a weapon found in a common area of a cell); *Mason v. Sargent*, 898 F.2d 679 (8th Cir. 1990) (upholding discipline imposed for contraband found in a shared locker); *Dye v. Wilson*, No. 15-2790 (SRN/JSM), 2016 WL 3578988, *8 (D. Minn. June 9, 2016), report and recommendation adopted by 2016 WL 3580615 (D. Minn. June 28, 2016) (upholding discipline for four inmates for contraband found in their cell).

The courts are not part of the appellate process for prison discipline proceedings. *Mason*, 898 F.2d at 680; *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir. 1969). The findings of a prison disciplinary authority should not be second-guessed by the federal courts so long as they "are supported by some evidence in the record." *Hill,* 472 U.S. at 455. Satisfying the standard does not require an independent assessment of the credibility of witnesses or weighing of the evidence. *Id..; see also Goff v. Burton*, 7 F.3d 734, 739 (8th Cir. 1993). The standard merely requires the existence of *any* evidence in the record that would support the conclusion reached by the disciplinary board. *See Hill,* 472 U.S. at 455-56. The Court should accept the DHO's determination that Salcido-Dominguez violated

16

Code 108 because "some evidence" supports the DHO's conclusion. *See Campbell*, 623 F.2d at 505; *see also Hill,* 472 U.S. at 455-56; *Mason*, 898 F.2d at 680.

Therefore, the disciplinary proceeding at issue did not violate Salcido-Dominguez's constitutional right to due process as he alleges. The petition should accordingly be denied.

## CONCLUSION

The petition should be dismissed because Salcido-Dominguez failed to exhaust his administrative remedies. In the alternative, the petition should be denied because Salcido-Dominguez was afforded all the due process to which he was entitled during his disciplinary proceedings and because there is evidence that supports the determination of the DHO that Salcido-Dominguez committed the prohibited act as charged.

Dated: April 7, 2026

DANIEL N. ROSEN
United States Attorney

*s/ Gregory G. Brooker*

BY:  GREGORY G. BROOKER
Assistant U.S. Attorney
Attorney ID Number 166066
300 S. 4th St., #600
Minneapolis, MN  55415
Phone:  612-664-5600
Email:  greg.brooker@usdoj.gov

ATTORNEYS FOR RESPONDENT

17